UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDWEST MARKETING COMPANY, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>QUALITY PRODUCE SUPPLIERS, INC., et al.<br><br>Defendants. | No. 11 CV 7786<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

Plaintiffs, Midwest Marketing Company, Inc. ("Midwest") and Ruby Robinson Co., Inc. ("Ruby"), Intervening Plaintiffs Bushmans Inc. ("Bushmans"), H.C. Schmieding Produce Co., Inc. ("Schmieding"), and Great Lakes Produce & Marketing, LLC ("Great Lakes") (collectively, "Midwest Plaintiffs"), and consolidated Plaintiff Leathers Melon Company, Inc. ("Leathers") (together, the Midwest Plaintiffs and Leathers are referred to as the "Plaintiffs"), are suppliers of agricultural produce to Defendant Richard D. Srum ("Richard Srum"), who owned and operated Quality Produce Suppliers, Inc. ("Quality"). Plaintiffs Midwest and Ruby commenced this action on November 2, 2011 to enforce payment from the trust established by the provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c).

The matter comes before the Court on cross motions for summary judgment. Plaintiffs move for summary judgment against Defendants Quality, Richard Srum, and Patsy Srum. Defendant Patsy Srum moves for summary judgment against Plaintiffs -- Midwest and Ruby,

Intervening Plaintiffs -- Midwest Plaintiffs, and consolidated Plaintiff -- Leathers as to her personal liability. For the foregoing reasons, I grant Plaintiffs' motion for summary judgment against Defendants Quality and Richard Srum. I deny Plaintiffs' and Defendant Patsy Srum's motions for summary judgment because there are material facts in dispute.

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Midwest, Ruby, Bushmans, Schmieding, Great Lakes, and Leathers are corporations that sell wholesale quantities of perishable agricultural commodities ("produce"), and were licensed with the United States Department of Agriculture ("USDA") as dealers under the PACA at all relevant times. Quality is an Illinois corporation that purchased and sold wholesale quantities of produce. Richard Srum, as Quality's President, owner, director, and signatory on all bank accounts, was always in a position of control over the PACA trust assets. Richard Srum was actively involved in the operation and management of Quality.

Patsy Srum, mother of Richard Srum, worked as a part-time bookkeeper for Quality, earning approximately $2,000 per month. Patsy Srum worked anywhere from one to two hours per week in the winter months to eight to ten hours per week in the summer months. As bookkeeper, Patsy Srum mailed out Quality's invoices to its customers, prepared Quality's payroll, had access to Quality's financial information, issued and sent Quality's monthly tax payments to state and federal taxing authorities, and corresponded with Quality's accountant regarding the company's tax filings. Patsy Srum was not involved in decision-making regarding which vendors to pay or when to pay them.

At all times relevant to this case, Patsy Srum was listed as Quality's corporate secretary on Quality's PACA license application, was a signatory on one of Quality's bank accounts, and was in possession and control of Quality checks from her residence in Arkansas. During 2010

and 2011, Patsy Srum issued and signed over ninety (90) Quality checks totaling in excess of $86,000.00, including checks written from Quality's account to herself and to her now-deceased husband Donald Srum.

From around June through November 2011, Plaintiffs sold and delivered wholesale quantities of produce to Quality in Chicago. Plaintiffs properly preserved their status as trust beneficiaries under PACA. On November 4, 2011, Plaintiffs Midwest and Ruby moved for entry of a temporary restraining order and a preliminary injunction order to prevent dissipation of trust assets of Defendant Quality.

On November 15, 2011, this court entered a Stipulation and Order in favor of Plaintiffs Midwest and Ruby and against Defendants Quality and Richard Srum stating that (1) Midwest is a trust creditor under the PACA against Defendants on a debt in the principle amount of $183,863.76, plus statutory interest at a rate of five percent per annum; and (2) Ruby is a trust creditor under the PACA against Defendants on a debt in the principle amount of $14,079.75, plus contract interest at a rate of eighteen percent (18%) per annum, plus $3,500.00 in reasonable attorneys' fees. The order set forth a monthly payment schedule for Quality to follow in repaying its debts owed to Midwest and Ruby.

Shortly thereafter, Defendants Quality and Richard Srum defaulted on the November 15 Stipulation and Order. As a result, the court entered a Consent Injunction and Agreed Order Establishing PACA Trust Claims Procedure ("PACA Procedure Order") on November 29, 2011. The PACA Procedure Order stated that Defendants Quality and Richard Srum, as well as their agents, subsidiaries, and assigns, shall not alienate dissipate, pay over, or assign any assets of Quality or its subsidiaries, related companies, or assigns. This court further ordered that all accounts receivable, bank accounts, and liquid assets of Quality be deposited into the Registry of

the Court to be held in trust. The court also consolidated Plaintiffs Midwest and Ruby's case with a separate action against Defendants filed by Plaintiff Leathers. Intervenors Bushmans, Schmieding, and Great Lakes filed a complaint on January 16, 2012.

Pursuant to the PACA Procedure Order, Defendant distributed the aggregate amount of $37,994.67 on April 18, 2012 and $14,108.30 on September 6, 2012 in trust funds to Midwest and Ruby. No other Quality trust funds were available for similar *pro rata* distributions to Midwest Plaintiffs and Leathers, resulting in a shortfall in trust assets in the aggregate amount of $431,641.56, plus additional interest through August 2013, and any additional attorneys' fees awarded by the Court.

After crediting all *pro rata* disbursements paid to Midwest and Ruby, Midwest is owed a principle amount of $165,963.58 plus interest of $8,161.77, calculated through August 31, 2013 at the Illinois state rate of 5% per annum; Ruby is owed $13,524.20 plus interest of $2,394.34, calculated through August 31, 2013 at an 18% contract interest rate per annum. Bushmans is owed $21,745.97 plus $3,849.93 in interest, calculated through August 31, 2013 at an 18% contract interest rate. Schmieding is owed $14,509.81 plus $2,568.83 in interest, calculated through August 31, 2013 at an 18% contract interest rate. Great Lakes is owed $44,754.43 plus $5,282.25 in interest, calculated through August 31, 2013 at a 12% contract interest rate.

On September 7, 2012, Plaintiffs amended their complaints and added a new Defendant Patsy Srum ("Defendant"). Second Amended Complaint; First Amended Complaint in Intervention (To Enforce Payment From Produce Trust). Plaintiffs assert six counts against Defendants Quality, Richard Srum, and Patsy Srum ("Quality Defendants"): (1) failure to pay trust funds to Plaintiffs in violation of the PACA; (2) failure to pay for goods sold to Plaintiff; (3) and (4) failure of Rick Srum and Patsy Srum, respectively, to preserve PACA trust assets and

unlawful dissipation of trust assets; (5) unlawful receipt and retention of PACA trust assets by Patsy Srum; and (6) liability of Quality Defendants for attorneys' fees and prejudgment interest.

Neither Quality nor Richard Srum has answered any of the various complaints filed against them, and Richard Srum has not contested his personal liability or the liability of Quality. Accordingly, the issue of the personal liability of Defendant Patsy Srum for the trust debt is of primary concern to Plaintiffs.

## III. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago,* 242 F.3d 737, 742 (7th Cir.2001).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party "may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact that requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original).

## IV. DISCUSSION

### A. The Perishable Agricultural Commodities Act ("PACA")

The PACA was enacted to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." 49 Fed.Reg. 45737. Accordingly,

the PACA requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499(b)(4). Section 499e(c) imposes a statutory trust on all produce-related assets, including the produce itself, other products derived therefrom, and any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers and brokers which must be maintained for the benefit of all unpaid suppliers and sellers of the produce until full payment has been made. 7 U.S.C. § 499(e)(c)(2). The trust, arising upon the commencement of the produce purchaser's business and receipt of perishable agricultural commodities, is continually in existence throughout the life of the purchaser's business.

The trust is a non-segregated "floating" trust that applies to the buyer's entire produce inventory when the produce is received, as well as to any subsequent proceeds from the sale of produce. 7 U.S.C. § 499e(c)(2). The PACA requires produce suppliers to provide the buyer notice of the suppliers' intent to preserve trust benefits. Notice can be accomplished by including the following language on the face of licensed produce supplier's invoices: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 USC § 499e(c))."

Agricultural merchants and dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 CFR § 46.46(e)(1). Failure to maintain the trust and make full payment promptly to the beneficiary trust is unlawful. 7 U.S.C. § 499(b)(4).

**B. Defendant Quality is Liable Under the PACA**

To sustain a claim under the PACA, a plaintiff must establish that (1) it qualifies for protection under PACA as a produce supplier; (2) it provided the requisite notice of intent to

preserve its interest in the statutory trust; and (3) the defendant acted inconsistent with its duty to maintain the trust and ensure any assets held in trust were freely available to fulfill any outstanding obligations to trust beneficiaries. 7 U.S.C. § 499 et seq.

It is undisputed that Midwest Plaintiffs, suppliers licensed under the PACA, qualify for protection under the PACA and provided Quality with requisite notice of its intent to preserve its trust interests. Quality did not maintain its PACA trust assets and failed to fulfill its outstanding obligations to Midwest Plaintiffs. Consequently, Quality is liable to Midwest Plaintiffs under the PACA in the amount found previously by this Court.

**C. Personal Liability under the PACA**

An individual who is in a position to oversee the proper application of PACA trust assets, and who does not preserve the trust assets for the beneficiaries, has breached a fiduciary duty and is personally liable for that act. *Patterson Frozen Foods v. Crown Foods Int'l,* 307 F.3d 666, 669 (7th Cir. 2002). Courts must look beyond an individual's formal position within a company and consider the context surrounding the individual's position to evaluate whether an individual defendant is in a position to control trust assets. *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 172 (3rd Cir. 2010) ("the ability to control is core").

In assessing whether an individual's involvement in the company is sufficient to create a legal duty to preserve trust assets, courts have rejected a bright-line litmus test in favor of a fact-intensive inquiry examining context. Courts consider factors such as whether an individual had a role in causing a breach of trust, had control of the day-to-day operations, was active in the management of the company, signed for company accounts, or was the primary actor in failing to pay under PACA. *Sato & Co., LLC v. S&M Produce, Inc.*, 859 F.Supp.2d 923, 927-28 (N.D.Ill. 2012) (collecting cases).

In *Bear Mountain*, the Third Circuit considered the totality of circumstances to determine that the defendant was minimally involved with the company and not personally liable over the PACA trusts. 623 F.3d at 172-75. The Court set aside the issue of the defendant's title or ownership status and examined whether the defendant actually possessed power to manage PACA assets. The Court found that the defendant's husband and the office manager made all management decisions. In contrast, the defendant was not involved in fundamental business decisions, had no managerial role, and was supervised on part-time "basic clerk level" work by the office manager. The defendant's work was limited to operational tasks, such as collecting tickets, writing checks at the direction of her husband or office manager, and preparing payrolls.

In the absence of any examination by the Seventh Circuit of what constitutes "control" over PACA trust assets, this Court has relied on the Third Circuit's opinion in *Bear Mountain*. See, e.g., *Harris N.A. v. Bacchus Fresh Intern, Inc.*, 2013 WL 1200609 (N.D.Ill. Mar. 25, 2013); *Sato & Co., LLC v. S&M Produce, Inc.*, 859 F.Supp.2d 923, 930-31 (N.D.Ill. 2012); *Anthony Marano Co. v. MS Grand Bridgeview*, 2010 WL 5419057 (N.D.Ill. Dec. 23, 2010).

In *Harris N.A.*, this Court found that the defendant was not in control of PACA trust assets even though he was an officer who had held titles of vice president and secretary, a shareholder of the company, and a signatory on the Company's bank account. 2013 WL 1200609, at *7-9. The Court found little evidence that defendant was able to make any management decisions on behalf of the company, including regarding which bills or vendors would be paid, had no authority to hire or fire employees, and did not supervise or manage any employees. *Id*. at 7. Defendant's authority to extend lines of credit, access accounts receivable, and view the company's financial information was limited. Defendant was not authorized to issue checks unilaterally and never had control of the check book. *Id*. at 8. The Court pointed to

evidence regarding the limits of defendant's authority—that the one check defendant signed was issued by the bookkeeper at the direction of the president when the president was out of the country—to further conclude that defendant was not in a position to control trust assets. *Id*.

Similarly, the Court in *Sato & Co.* declined to hold a defendant individually liable even though he had signing authority of the company's checking account because defendant could only execute checks when specifically directed to by the company's leader. 859 F.Supp.2d at 930-31. There, the defendant turned over to his partner operational control of the company of which he shared equal ownership. Even though defendant continued to hold stock in the company, was regularly at the company's office, and was named on the PACA license, the Court found him to be minimally involved in the company. The defendant did not manage the company's affairs, had no involvement in the day-to-day operations of the company, made no business decisions, did not review the company's bank statements or books and records, did not attend any meetings of the board of directors or stockholders, and received no compensation. *Id*. at 928-30. Defendant had no knowledge of how much produce was purchased, from whom, or who had been paid. Although defendant was one of only two individuals who had signing authority on the company's checking account, he executed checks only when his partner specifically directed him to sign a check to a specific person or entity in a specific amount. *Id*. at 928.

In *Anthony Marano Co.*, on the other hand, the court found that the defendant, a night manager that oversaw produce, was in a position to control trust assets. The defendant was a one-third shareholder who attended shareholder meetings and served as vice president. 2010 WL 5419057, at *9-11. Like *Bear Mountain*, *Harris*, and *Sato*, the defendant's day-to-day dealings with the company was limited and he was not involved in any purchasing, high level

9

management, or financial oversight. *Id.* at 10. In contrast, however, the defendant was an authorized and active signatory on both the payroll and operating accounts for the company. *Id.* at 11. The defendant was authorized to, and did, unilaterally issue and sign payroll checks from the company. *Id.* While the defendant had limitations on his non-payroll signing authority, the defendant solely signed certain creditor checks paid from the operating account. *Id.*

Courts that have considered the question of "control" over trust assets thus suggest that the scope of an individual's activity and signing authority over a company's operating bank account is a key factor in determining whether an individual is personally liable under the PACA.

*1. A Material Factual Dispute Exists Regarding Defendant Patsy Srum's Personal Liability*

Patsy Srum's situation presents a close question under this contextual approach. Although there is some dispute regarding whether Patsy Srum was aware of her position, it is uncontested that she was listed on Quality's PACA license applications and licenses as Quality's corporate secretary at all relevant times and so, at least nominally an officer. Whether Defendant Patsy Srum is liable under PACA does not, however, turn on whether she held a particular position. Rather, under the case law discussed above, the central issue is whether Patsy Srum actually had authority to direct the control of (*i.e.,* manage) PACA assets held in trust.

Plaintiffs argue that Patsy Srum was in a position to control the PACA trust because of her routine use of Quality's corporate bank account and access to the company's financial records. Additionally, Patsy Srum was a signatory on Quality's operating bank account and had physical possession and control of its checkbook at her residence in Arkansas. Patsy Srum issued and signed, in her name, more than ninety Quality checks during 2010 and 2011 that totaled in excess of $86,000. As Quality's bookkeeper, Patsy Srum communicated with

Quality's accountant, mailed out invoices to Quality's customers, prepared and processed payroll, and paid employment tax obligations. Patsy Srum also issued checks to herself for compensation in the amount of $2,000 per month, as well as additional checks in varying amounts. Plaintiff points to a lack of 1099 or W-2 tax forms filed by Quality to argue that these payments reflect ownership, rather than compensation.

Patsy Srum, however, argues that she was never in a position of control at Quality by pointing to facts which demonstrate that her involvement at Quality was minimal. Patsy Srum was not involved in day-to-day business decisions or decision-making regarding vendor issues, such as determining which vendors to pay or when to pay them. Patsy Srum also could not make decisions to hire or fire employees. She is not listed on any leases, personal guarantees, or any other agreements. Patsy Srum asserts that she is not a shareholder or member of the company, but, at most, a part-time consultant bookkeeper who received and followed directions directly from Richard Srum. While acknowledging that she is a signatory on the company's bank account, Patsy Srum claims that she could not issue checks without direct authority from Richard Srum.

Plaintiffs and Defendant Patsy Srum are in dispute on a material fact—the extent of Patsy Srum's authority to issue checks from Quality's operating account. Plaintiff relies on evidence showing that Defendant Patsy Srum has issued more than ninety checks in an amount totaling over $86,000 from Quality's bank account. Defendant Patsy Srum, however, avers that she has never written a check without direct authority from Richard Srum, and that she could not issue checks without direct authority from Richard Srum. The uncontested facts remain inconclusive regarding limitations, if any, Patsy Srum had on her authority to issue checks and access the company's funds. A reasonable trier of fact could find that Defendant Patsy Srum either was or

was not in a position to control the PACA assets. As there is a material issue of fact regarding whether Defendant Patsy Srum was in a position to control the trust assets, it cannot be decided on summary judgment whether Defendant Patsy Srum had a fiduciary duty to PACA trust beneficiaries and violated that duty.

*2. Richard Srum is Personally Liable for PACA Violations*

There is no dispute that Richard Srum was actively involved in the operations and management of Quality as president, director, and owner of the corporation, and that he was in a position to control the PACA trust assets belonging to Plaintiffs. Additionally, there is no dispute that Richard Srum was a signatory on Quality's bank accounts at all relevant times. Richard Srum was in a position of control over the PACA trust and was responsible for ensuring that the PACA trust assets were not dissipated. Richard Srum failed to preserve the trust assets. This was a breach of his fiduciary duty for which he is personally liable. *Patterson Frozen Foods*, 307 F.3d at 669.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs' summary judgment motions are granted against Defendants Quality and Richard Srum. Due to a material factual dispute, summary judgment regarding the personal liability of Defendant Patsy Srum is denied.

ENTER:

*[signature]*

James B. Zagel
United States District Judge

DATE: December 19, 2013

12